UNITED STATES DISTRICT COURT
DISTRICT OF DISTRICT OF COLUMBIA

CASE NO.: _____

KHALID EL HARIZI
Via del Serafico, 107
00142 Rome, Italy

       Plaintiff,
v.

CLAUDIA PARDINAS-OCANA
The World Bank
1818 H Street N.W.
Washington D.C.

       Defendant.
_____/

## VERIFIED COMPLAINT FOR ISSUANCE OF SHOW CAUSE ORDER AND FOR RETURN OF CHILD TO ITALY

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 42 U.S.C. 11601 et seq.**

### I. Preamble

1. As a result of the recent illegal international removal by the Defendant of the parties' minor child from the jurisdiction of Italy on November 4, 2006, this Verified Complaint is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act[2] (hereinafter "ICARA"). The Convention came into effect in the United States of America on July 1, 1988 and was ratified between the United States of America and Italy on May 1, 1995.

---

[1] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10,493 (1986).
[2] 42 U.S.C. 11601 et seq. (2001). ICARA was created to deal with the sudden abduction of children and to allow a petitioner to assert his or her rights in exigent circumstances. See Distler v. Distler, 26 F. Supp. 2d 723, 727 (D.N.J. 1998).

2. The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art. 1.[3]

## II. Jurisdiction

3. This Court has jurisdiction pursuant to 42 U.S.C. § 11603 (2001)[4] and because this case involves the removal and retention of a child under the age of sixteen from her habitual residence of Italy to the United States of America.[5]

## III. Status of Plaintiff and Child

4. The Plaintiff, Khalid El Harizi ("Mr. El Harizi") and the Defendant, Claudia Pardinas-Ocana ("Ms. Pardinas-Ocana"), are the parents of Valentina Aicha Blanca, born September 30, 2005 in Arlington, Virginia (hereinafter "Valentina" or the "minor child"). A copy of the minor child's birth certificate is attached hereto as **Exhibit A**. Subsequent to Valentina's birth, the family moved from Virginia to Rome, Italy on January 1, 2006. In October 2006, the parties began the process of a non-contested separation but did not commence formal legal proceedings. On November 4, 2006, Defendant wrongfully removed the minor child from Italy and spirited her to the United States. At the time of Defendant's wrongful removal and

---

[3] As has been stated by other courts addressing Hague cases, the Convention therefore authorizes a federal district court to determine the merits of the abduction claim but does not allow it to consider the merits of any underlying custody dispute. Morris v. Morris, 55 F. Supp. 2d 1156, 1160 (D. Colo. 1999) (recognizing that "[p]ursuant to Article 19 of the Convention, [this Court has] no power to pass on the merits of custody"); see also Currier v. Currier, 845 F. Supp. 916 (D. N.H. 1994) citing Friedrich v. Friedrich, 983 F.2d 1396, 1399 (6th Cir. 1993); Meredith v. Meredith, 759 F. Supp. 1432, 1434 (D. Ariz. 1991). The court's role is not to make traditional custody decisions but to determine in what *jurisdiction* the minor child should be physically located so that the proper jurisdiction can make those custody decisions. Loos v. Manuel, 651 A.2d 1077 (N.J. Super. Ct. Ch. Div. 1994).

[4] A court considering an ICARA petition has jurisdiction to decide the merits only of the wrongful removal claim, not of any underlying custody dispute. The Hague Convention is intended to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court. Lops v. Lops, 140 F.3d 927, 936 (11th Cir. 1998) (citations omitted); Barrios Gil v. Rodriguez, 184 F. Supp. 2d 1221, 1224 (M.D. Fla. 2002)

[5] Toren v. Toren, 191 F. 3d 23 (1999).

retention of Valentina, Mr. El Harizi was actually exercising custody rights within the meaning of Articles Three and Five of the Convention,[6] in that he is the father of Valentina and has exercised custody rights over the minor child since she was born. Furthermore, Valentina was habitually resident in Italy within the meaning of Article 3 of the Convention until her wrongful removal from Italy.

    5.    The Convention applies to cases where a child under the age of sixteen (16) years has been removed from his or her habitual residence[7] in breach of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal[8] or wrongful retention[9] of the child.

---

[6] The issue of "custody" must be addressed under Italian law. Pesin, 77 F. Supp. 2d at 1284; see also Whallon v. Lynn, 230 F.3d 450 (1st Cir. 2000); Friedrich v. Friedrich, 983 F.2d at 1402; Ohlander v. Larson, 114 F.3d 1531, 1541 (10th Cir. 1997) (stating that the Convention was meant, in part, to lend priority to the custody determination hailing from the child's state of habitual residence. Pursuant to Article 14 of the Convention, this Court "may take notice directly of the law of . . . the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law . . . ." See also Fed. R. Civ. P. 44.1.

[7] "Courts in both the United States and foreign jurisdictions have defined habitual residence as the place where [the child] has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose for the child's perspective." Pesin v. Rodriguez, 77 F. Supp. 2d 1277, 1284 (S.D. Fla. 1999) (citations omitted), aff'd, Pesin v. Rodriguez, 244 F.3d 1250 (11th Cir. 2001); Morris, 55 F. Supp. 2d at 1161 ("the law requires [the Court] to focus on the child in determining habitual residence"); see also In re Robinson, 938 F. Supp. 1339, 1341-42 (D. Colo. 1997). It is a state of being or state of mind. Habitual residence is the permanent physical residence of the minor child as distinguished from her legal residence or domicile. In Re Bates, No. CA 122-89, High Court of Justice, Family Div., Italy, February 23, 1989; Brook v. Willis, 907 F. Supp. 57, 61 (S.D.N.Y. 1995); Loos, 651 A.2d at 1080 (stating that it is immaterial that the concept of habitual residence lacks precision); see also T.B. v. J.B., 2000 WL 1881251, at *1 (Supreme Court of Judicature, Italy, December 19, 2000) (stating that it is important to remember that the Convention is concerned with the return of children to the country of their habitual residence and not with their return to any particular person).

[8] "Article 3 of the Hague Convention provides that the removal or retention of a child is wrongful where it violates the custody rights of another person that were actually being exercised at the time of the removal or retention or would have been exercised but for the removal or retention." Lops, 140 F.3d at 935: "[t]he removal of a child from the country of his or her habitual residence is 'wrongful' under the Hague Convention if a person in that country is, or would otherwise be, exercising custody rights to the child under that country's law at the moment of removal." Friedrich v. Friedrich, 78 F.3d 1060, 1064 (6th Cir. 1996); see also Prevot v. Prevot, 59 F.3d 556 (6th Cir. 1995); Convention, art. 3.

[9] "Wrongful retention" occurs when it is in breach of rights of custody attributed to a person under the law of the country in which the child was habitually resident immediately before the retention; and at the time of retention these rights were actually exercised, or would have been so exercised, but for the wrongful retention. Convention, art. 3; Feder, 63 F.3d at 225; Wanninger v. Wanninger, 850 F. Supp. 78, 80-81 (D. Mass. 1994).

6. The minor child is under the age of 16. At the time immediately before the wrongful removal of the minor child from Italy, Valentina habitually resided in Italy within the meaning of Article 3 of the Convention. At present, Mr. El Harizi is located in the contracting state of Italy.

### IV. Wrongful Removal and Wrongful Retention of Minor Child by Defendant

7. At the time of the abduction of the minor child from Italy, Mr. El Harizi had and continues to have rights of custody under Italian Law in terms of Articles 146 and 316-317 of the Italian Civil Code, a copy of which is attached hereto and incorporated herein as **Exhibit B**. The removal of the minor child from Italy is in violation of Italian law and is a wrongful removal within the meaning of Articles 3 and 5 of the Convention.

8. The parties were married on November 30, 2002 in Washington D.C. In October, 2006, the parties began the process of a non-contested separation. While the parties had not commenced a formal divorce proceeding in the Italian courts, they had scheduled a meeting with counsel to take place on November 9, 2006. On November 4, 2006, Ms. Pardinas-Ocana fled Italy with the minor child, in direct contravention of Italian law and has been living in the Washington, D.C. area at a location not disclosed to Mr El Harizi, with the minor child since that time.

9. When Ms. Pardinas-Ocana fled Italy with the minor child, she took all the parties' furniture and exhausted all of Plaintiff's credit cards. She had also stopped paying her share of the rent and utilities of the house since October 2006 leaving Plaintiff with a commitment vis-à-vis the house owner to pay for the rent and related expenses until April 30, 2007. Ms. Pardinas-Ocana was able to conceal her abduction plans by denying Mr. El Harizi all access to the family home for one month and hiring moving trucks to load furniture and personal effects in the middle of the night.

10. Mr. El Harizi has never acquiesced or consented to the removal of the minor child from Italy or the minor child's retention outside of Italy.

11. Mr. El Harizi has had no contact with his daughter since her wrongful removal from Italy on November 4, 2006. Mr. El Harizi has sought information regarding the well-being of his daughter, but Defendant has declined to provide any substantive information about Valentina.

### V. Provisional and Emergency Remedies[10]

12. Mr. El Harizi requests that this Court issue a Show Cause Order to be served by the United States Marshal for the Defendant to appear personally before this Court.[11] Pursuant to 42 U.S.C. § 11604 of ICARA in a proceeding for the return of a child, "[n]o court exercising jurisdiction . . . may . . . order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 42 U.S.C. § 11604 (2001). In this case, the State law referred to is that of the District of Columbia. In the District of Columbia, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes. D.C. Code §§ 16-4601.01 *et seq*. District of Columbia law addresses the appearance of the parties and the child in such cases in § 16-4602.10 of the UCCJEA. That section authorizes this Court to order the appearance of the child and custodian or custodians *together*. Id. This Court therefore has the authority to issue a show cause order, ordering the appearance of Ms. Pardinas-Ocana in that the provisions of 42 U.S.C. §11604 can be met.

13. Mr. El Harizi therefore requests that this Court issue an immediate order prohibiting the removal of the minor child from the jurisdiction of this Court, taking into safe-

---

[10] This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." 42 U.S.C. 11604 (1995).

[11] Such an approach is consistent with the approach of other district courts faced with equivalent concerns regarding the flight of a respondent following service of a petition for return under the Convention. See, e.g. Bocquet v. Ouzid, 225 F. Supp. 2d 1337 (S.D. Fl. 2002).

keeping all of the minor child's travel documents and setting an expedited hearing on the Verified Complaint for Return of Child to Italy.[12]

## VI. Relief Requested

14. **WHEREFORE**, Plaintiff, Khalid El Harizi, respectfully requests the following relief:

   a.  an Order directing that the name of the minor child be entered into the national police computer system (N.C.I.C.) missing person section;
   b.  an Order directing a prompt return of the minor child to her habitual residence of Italy;
   c.  the issuance of an immediate Order prohibiting the removal of the minor child from the jurisdiction of this Court;
   d.  an Order commanding Ms. Pardinas-Ocana to appear in this Court to show cause why the minor child has been kept from her father and why she has acted in violation of Italian law;
   f.  an Order directing Ms. Pardinas-Ocana to pay Mr. El Harizi's legal costs and fees; and
   g.  any such further relief as justice and its cause may require.

## VII. Notice of Hearing

15. Pursuant to 42 U.S.C. § 11603(c), Ms. Pardinas-Ocana will be given notice of any hearing in accordance with §16-4602.05 the UCCJEA.[13]

## VIII. Attorneys' Fees and Costs Including Transportation Expenses Pursuant to Convention Article 26 and U.S.C. 11607

---

[12] Such a Complaint may also be treated as an application for a Writ of Habeas Corpus itself. Zajaczkowski v. Zajaczkowska, 932 F. Supp. 128, 132 (D.Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus . . . pursuant to 28 U.S.C.A. § 2243"); see also In re McCullough, 4 F. Supp. 2d 411 (W. D. Penn. 1998).

[13] The Convention itself does not specify any specific notice requirements. ICARA provides that notice be given in accordance with the applicable law governing notice in interstate child custody proceedings. 42 U.S.C. § 11603(c). In the United States, the Parental Kidnapping Prevention Act ("PKPA") and the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") govern notice in interstate child custody proceedings. Klam v. Klam, 797 F. Supp. 202, 205 (E.D.N.Y. 1992). The UCCJEA and Part (e) of the PKPA provide that reasonable notice and opportunity to be heard must be given to all parties before a custody determination is made. The UCCJEA further provides that notice shall be given in a manner reasonably calculated to give actual notice. In the District of Columbia, the relevant statute is found in the UCCJEA. The Notice section provides, in pertinent part, that "notice and an opportunity to be heard in accordance with the standards Section 16-4601.07 must be given to all persons entitled to notice under the law of the District." Id. Furthermore, in cases where flight of a respondent is at issue, federal courts have allowed substituted service in any manner reasonably effective to give the respondent notice of the suit. Ingram v. Ingram, 463 So.2d 932, 936 (La.App. 1985).

16. Mr. El Harizi has incurred substantial expenses as a result of the wrongful removal and wrongful retention of the minor child by Ms. Pardinas-Ocana. Mr. El Harizi will submit a copy of all expenditures as soon as practicable and possible and will amend these costs, from time to time, according to proof and in light of further expenditure required because of this wrongful removal and retention.

17. Mr. El Harizi respectfully requests that this Court award all legal costs and fees incurred to date as required by 42 U.S.C. 11607, reserving jurisdiction over further expenses.

### IX. Declaration Pursuant to Uniform Child Custody Jurisdiction and Enforcement Act

18. The details regarding the minor child that are required to be provided under § 16-4602.09 of the UCCJEA are as follows:

- The present address of the minor child is unknown. Upon information and belief, her current address is in the greater Washington, D.C. area. This belief is founded upon the fact that Defendant's place of work is located at The World Bank, 1818 H Street N.W., Washington, D.C.

- Prior to the removal of the minor child from Italy, her addresses for the last 5 years have been as follows: 3239 A Sutton Place N.W. Washington, D.C. from September 2005 to November 2005; Belgrano 928, Quilmes 1878, Argentina from November 2005 to January 2006; Via Thailandia 24, 00144 Rome, Italy from January 2006 through the date of her abduction on November 4, 2006. The minor child was born September 30, 2005; no address can be listed prior to that date.

- Mr. El Harizi has participated as a party to Italian litigation as follows: no formal litigation has commenced. A meeting between the parties in presence of their lawyers was set for November 9, 2006, but did not take place because Ms. Pardinas-Ocana fled the country on November 4, 2006.

- Mr. El Harizi does not have information of any custody proceeding concerning the minor child pending in any other court of this or any other State.

- Mr. El Harizi does not know of any person or institution not a party to the proceedings who has physical custody of the minor child or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with, the minor child.

### VERIFICATION

I, Khalid El Harizi, solemnly declare and affirm under the penalties of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _____      _____SEE ATTACHED_____
            Date                   Khalid El Harizi


Respectfully Submitted,

_____
Stephen J. Cullen, Esquire
Bar No: 439872
Miles & Stockbridge P.C.
One West Pennsylvania Avenue
Suite 900
Towson, Maryland 21204
(410) 821-6565
(410) 385-3709 (fax)
scullen@milesstockbridge.com
*Attorneys for Plaintiff*

_____
Rachel T. McGuckian, Esquire
Bar No.: 475548
Miles & Stockbridge P.C.
11 North Washington Street, Suite 700
Rockville, Maryland 20850
(301) 762-1600
(301) 762-0363 (fax)
rmcguckian@milesstockbridge.com
*Attorneys for Plaintiff*

- Mr. El Harizi does not know of any person or institution not a party to the proceedings who has physical custody of the minor child or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with, the minor child.

### VERIFICATION

I, Khalid El Harizi, solemnly declare and affirm under the penalties of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 02/12/2006
Date

_____
Khalid El Harizi

Respectfully Submitted,

_____
Stephen J. Cullen, Esquire
Bar No: 439872
Miles & Stockbridge P.C.
One West Pennsylvania Avenue
Suite 900
Towson, Maryland 21204
(410) 821-6565
(410) 385-3709 (fax)
scullen@milesstockbridge.com
*Attorneys for Plaintiff*

_____
Rachel T. McGuckian, Esquire
Bar No.: 475548
Miles & Stockbridge P.C.
11 North Washington Street, Suite 700
Rockville, Maryland 20850
(301) 762-1600
(301) 762-0363 (fax)
rmcguckian@milesstockbridge.com
*Attorneys for Plaintiff*

Case 1:06-cv-02204-RJL    Document 1-2    Filed 12/26/2006    Page 1 of 2

# EXHIBIT

# A

# CERTIFICATE OF VITAL RECORD

VERIFY PRESENCE OF WATERMARK   HOLD TO LIGHT TO VIEW

2295180

## COMMONWEALTH OF VIRGINIA
DEPARTMENT OF HEALTH – DIVISION OF VITAL RECORDS

### CERTIFICATE OF LIVE BIRTH

STATE FILE NUMBER: 145-05-074714

NAME OF REGISTRANT: VALENTINA AICHA BLANCA EL HARIZI

DATE OF BIRTH: SEPTEMBER 30, 2005              SEX: FEMALE

PLACE OF BIRTH: ARLINGTON COUNTY, VIRGINIA

MAIDEN NAME OF MOTHER: CLAUDIA MIRTHA PARDINAS OCANA

AGE OF MOTHER: 44

MOTHER'S PLACE OF BIRTH: ARGENTINA

NAME OF FATHER: KHALID EL HARIZI

AGE OF FATHER: 51

FATHER'S PLACE OF BIRTH: MOROCCO

DATE RECORD FILED: OCTOBER 7, 2005



This is to certify that this is a true and correct reproduction or abstract of the official record filed with the Virginia Department of Health, Richmond, Virginia.

DATE ISSUED  October 12, 2005

Janet M. Rainey, Acting State Registrar

Do not accept unless on security paper with seal of Vital Statistics clearly impressed. Section 32.1-272, Code of Virginia, as amended.

VS 158

VOID WITHOUT WATERMARK OR IF ALTERED OR ERASED

# EXHIBIT

# B

# THE ITALIAN CIVIL CODE

and

Complementary Legislation

*Translated in 1969 by*
Mario Beltramo, Giovanni E. Longo, John H. Merryman

*Supplemented, translated and edited by*
Mario Beltramo
(from 1970 through 1996)

*Subsequently supplemented, translated and edited by*
Susanna Beltramo

BOOK ONE

PERSONS AND THE FAMILY

(Aticles 1-455)

OCEANA PUBLICATIONS, INC.
DOBBS FERRY, N.Y.

Release 2005-1
Issued January 2005

Booklet 3

(106, 109) is punishable by an administrative penalty of ITL 60,000 [Euro 30.00] to ITL 400,000 [Euro 206.00].(20)

The same penalty applies to a vital statistics officer who has proceeded with the celebration of a marriage without the presence of witnesses.

**138. Other infractions.** A vital statistics officer who in any manner violates any of the provisions of Articles 93, 95, 98, 99, 106, 107, 108, 109, 110, or 112 or commits any other infraction for which no special penalty is established in this section is punishable by the administrative penalty established in Article 135.

**139. Causes of nullity known to one spouse.** A spouse who, knowing of a cause of nullity of the marriage prior to the celebration, has left the other spouse in ignorance thereof, is punishable by an administrative penalty of ITL 80,000 [Euro 41.00] to ITL 400,000 [Euro 206.00] if the marriage is annulled. The other spouse is entitled to appropriate compensation, even if he does not give specific proof of the injury suffered (2043).(20)

**140. Non-observance of a period of mourning by widow.** A woman who contracts marriage notwithstanding the prohibition of Article 89, the officer who celebrates such marriage, and the other spouse, are punishable by an administrative penalty of 40,000 [Euro 20.00] to 160,000 Lire [Euro 82.00].

**141. Competence.** The offenses contemplated in the preceding article fall within the competence of the tribunal.(21)

**142. Limits of applicability of the preceding provisions.** The provisions of this section apply when the acts contemplated therein do not constitute a more serious offense.

## CHAPTER IV

### Rights and duties arising out of marriage

**143. Mutual rights and duties of spouses.** Through marriage the husband and the wife acquire the same rights and assume the same duties ($151^2$).

A mutual obligation to loyalty, moral and material support, cooperation in the interest of the family and cohabitation derives from the marriage.

Both spouses are bound, each in relation to his own assets and his own ability for professional or household work, to contribute to the needs of the family.(16)

**143 bis. Surname of wife.** The wife adds the surname of the husband to her own surname and retains it during her widowhood, until she contracts a new marriage.(21)

**143 ter. (Repealed)(22)**

**144. Pattern of family life and residence of family.** The spouses agree between them the pattern of family life and fix the residence of the family according to the requirements of both and to those prevailing for the family (43).

Each of the spouses has the authority to implement the agreed pattern.(16)

**145. Intervention of the court.** In case of disagreement each of the spouses may apply, without formalities, for the intervention of the court (41) which, having heard the opinions expressed by the spouses and, to the extent appropriate, by the children living with them who have attained the age of sixteen years, attempts to reach an agreed solution.

If such solution is not possible and the disagreement concerns the fixing of the residence (144) or other essential matters, the court, when so expressly and jointly requested by the spouses, adopts, by an order not susceptible of appeal, the solution which he deems most adequate for the requirements of the unity and life of the family.(16)

**146. Leaving the family residence.** The right to moral and material support contemplated in Article 143 is suspended with respect to the spouse who, having left the family residence without just cause (144), refuses to return to it.

The submission of a petition for separation (150 $ff.$) or for annulment (117) or for dissolution (149) of for cessation of the civil effects of the marriage(8) constitutes just cause for leaving the family residence.

The court can, according to circumstances, order the sequestration of the assets of the spouse who left (179, 215 $ff.$), to the extent capable of securing the performance of the obligations provided for by Articles 143, third paragraph, and 147.(16)

**147. Duties to the children.** Marriage imposes on both spouses the obligation to maintain, educate and instruct the children taking into account their ability, natural inclination and aspirations.(16)

**148. Sharing in burdens.** The spouses must fulfill the obligation contemplated in the preceding article in proportion to their respective means and according to their trade or household working ability ($143^2$). When the parents do not have sufficient means, the other legitimate or natural ascendants, in order of proximity, are bound to supply to the parents the means necessary in order that they may fulfill their duties to the children (147; $324^2$).

In case of non performance, the president of the tribunal, upon request of whomever has an interest, having heard the non performing party and having collected information, can order by a decree that a share of the income, of the obligated party, in proportion to his total income, be paid directly to the other spouse or to those who sustained the expenses for the maintenance, instruction and education of the children ($193^2$).

The decree, once served upon the interested parties and the third person debtor, is immediately enforceable, but the parties and the third person debtor can file an opposition within the period of twenty days after service.

# CHAPTER III

## Special Adoption[66]

## Title IX

## PARENTAL AUTHORITY[67]

**315. Duties of child to parents.** A child shall respect its parents and shall contribute, in relation to his own assets and income, to the maintenance of the family as long as he cohabits with it.[16]

**316. Exercise of parental authority.** A child is subject to the authority of its parents until majority (2) or emancipation (390 ff., 2048, 2941 No. 2).

The authority is exercised by both parents by mutual agreement (155).

In case of a contrast on questions of particular importance each parent can apply without formalities to the judge indicating the measures which he deems most appropriate.

If there is an incumbent danger of serious prejudice to the child, the father can adopt measures urgent and not deferrable.

The judge, after hearing the parents and the child, if the child is over fourteen years of age, suggests the decisions which he deems most useful in the interest of the child and of family unity. If the contrast continues, the judge attributes the power to decide to that of the parents whom, in the individual case, he deems more qualified to look after the interest of the child (51).[16]

**317. Impediment of one of the parents.** In case of remoteness, incapability or other impediment which makes it impossible for one of the parents to exercise parental authority, such authority is exercised solely by the other parent.

Joint authority of the parents does not cease when, pursuant to a separation (150 ff.), dissolution (149), annulment (117 ff.) or termination of the civil effects of marriage (149²),[8] the children are given in custody to one of them. The exercise of the authority is regulated, in such cases, in accordance with the provisions of Article 155.[16]

**317 bis. Exercise of authority.** A parent who acknowledged (250) his natural child is entitled to authority over him.

If the acknowledgment is made by both parents, the exercise of authority belongs jointly to both if they cohabit. The provisions of Article 316 apply. If the parents do not cohabit the exercise of the authority belongs to the parent with whom the child cohabits or if the child does not cohabit with any of them, to the parent who first made the acknowledgment. The judge, in the exclusive interest of the child, can provide otherwise; he can also exclude both parents from the exercise of the authority, providing for the appointment of a guardian.

PARENTAL AUTHORITY

The parent who does not exercise authority has the power to watch over the instruction, the education and the living conditions of the minor child.(68)

**318. Abandonment of parental home.** A child cannot leave the home of his parents or of the parent who exercises authority over him or the abode assigned to him by them. If the child leaves without permission, the parents can call it back applying, if necessary, to the guardianship judge.(16)

**319. (Repealed)**(69)

**320. Representation and administration.** The parents jointly, or the parent who exercises authority in an exclusive manner, represent the children born and to be born in all civil acts and administer their property (1387). Acts of administration in the ordinary course, excluding contracts by which personal rights of enjoyment (1571, 1615) are granted or acquired, can be performed severally by each parent.

In case of disagreement or of exercise of authority in difformity from the agreed decisions the provisions of Article 316 apply.

The parents cannot transfer, mortgage (2808) or pledge (2784 $ff$.) the property received by the child under any circumstances, even *causa mortis*, accept or renounce inheritances or legacies (471, 519, 649, 650), accept gifts ($782^2$, 784), proceed with the dissolution of common ownership (713 $ff$., 1111 $ff$.), contract loans (1813) or leases for a term exceeding nine years (1572) or perform other acts beyond the limits of administration in the ordinary course or initiate, compromise (1965, $1966^1$) or refer to arbitration actions in connection with such acts, except in case of necessity or for the obvious advantage of the child after authorization by the guardianship judge.

Principal amounts cannot be collected without the authorization of the guardianship judge who determines how they shall be invested.

The operation of a business enterprise (2195) cannot be continued except with the authorization of the tribunal, upon the opinion of the guardianship judge. The guardianship judge can consent to the operation of the enterprise on a provisional basis, until the tribunal rules on the petition (2294).

In a conflict of interests arises between children who are subject to the same parental authority, or between them and the parents or the parent exercising authority in an exclusive manner the guardianship judge shall appoint a special curator for the children. If the conflict arises between the children and only one of the parents exercising authority, representation of the children belongs solely to the other parent.(16)

**321. Appointment of a special curator.** In all cases in which the parents jointly, or the parent who exercises authority in an exclusive manner, cannot or do not intend to perform one or more acts in the interest of the child, beyond the limits of administration in the ordinary course (471), the judge, on request of the child, the public prosecutor or one of the relatives by blood having an interest, and after

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

KHALID EL HARIZI
Via del Serafico, 107
00142 Rome, Italy

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Rome, Italy
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

CLAUDIA PARDINAS-OCANA
1818 H Street N.W.
Washington D.C.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Stephen J. Cullen
Rachel T. McGuckian
Miles & Stockbridge P.C.
One West Pennsylvania Avenue, Suite 900
Towson, Maryland 21204

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ● E. General Civil (Other)  OR  ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
International Child Abduction Remedies Act; 42 U.S.C. 11601 et seq.; action for return of child to Italy pursuant to treaty on international child abduction

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 12/22/06   SIGNATURE OF ATTORNEY OF RECORD  *Stephen J. Cullen*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.