UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KHALID EL-HARIZI | : | **DEFENDANT'S MOTION TO DISMISS** |
| Residence Address Unknown | : | **AND TO REDACT, OR PLACE UNDER** |
| | : | **SEAL, FILED PLEADINGS** |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.:    06cv2204 (RJL) |
| | : | |
| CLAUDIA PARDINAS-OCANA | : | |
| 5480 Wisconsin Avenue, Apartment 704 | : | |
| Chevy Chase, MD   20815 | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO DISMISS**
**AND TO REDACT, OR PLACE UNDER SEAL, FILED PLEADINGS**

The Defendant and mother, Claudia Pardinas-Ocana, hereby moves pursuant to Fed. R.

Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6) for entry of an Order dismissing the Plaintiff's

Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to

state a claim upon which relief may be granted.  The mother also moves for dismissal due to

the Plaintiff's failure to comply with the local rules of this Court.

Finally, the mother requests that papers improperly filed containing personal

identification information concerning the parties' baby be redacted or placed under seal.

The grounds for the relief requested and the specific relief requested are set forth in the

accompanying memorandum of Points and Authorities, Affidavits attached hereto, and

proposed Order which are by this reference incorporated herein.

Respectfully submitted,

/s/

By: _____

Faith D. Dornbrand (D.C. Bar #321851)
Pasternak & Fidis, P.C.
7735 Old Georgetown Road
Suite 1100
Bethesda, Maryland   20814
301-656-8850
301-656-3053 (fax)
Counsel for Defendant

and

Randell Ogg (D.C. Bar #324772)
1150 Connecticut Avenue, N.W.
Washington, D.C.
202-828-4100
202-828-4130 (fax)
Counsel for Defendant

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | : | **MEMORANDUM OF POINTS AND** |
| KHALID EL-HARIZI | : | **AUTHORITIES IN SUPPORT OF** |
| Residence Address Unknown | : | **DEFENDANT'S MOTION TO DISMISS** |
| | : | **AND TO REDACT, OR PLACE UNDER** |
| Plaintiff, | : | **SEAL, FILED PLEADINGS** |
| | : | |
| v. | : | CASE NO.:    06cv2204 (RJL) |
| | : | |
| CLAUDIA PARDINAS-OCANA | : | |
| 5480 Wisconsin Avenue, Apartment 704 | : | |
| Chevy Chase, MD   20815 | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND TO REDACT, OR PLACE UNDER SEAL, FILED PLEADINGS

### Introduction

This Court has no personal or subject matter jurisdiction in this matter and there is no factual or legal basis for this Court to compel the parties' one-year-old baby, an American citizen, to be transported to Italy, which is not the habitual residence of the child.

As the attached Affidavit of Ms. Pardinas-Ocana reveals, this case involves no Italian citizens. Defendant's Aff. ¶¶ 2-5 (hereinafter "Aff. ¶"). The father, a Moroccan and French citizen, is attempting to separate a breast-feeding mother, a permanent resident of the United States, from the parties' one-year-old baby, an American citizen. *Id*. The mother and the baby are living in the country of habitual residence, the United States. Aff. ¶¶ 5-8. The father abandoned his wife and baby daughter for another woman while the family was temporarily living in Italy. Aff. ¶¶ 9-10. The father then repeatedly and explicitly authorized his wife and

baby to return to the United States.  Aff. ¶ 12.  Indeed, he terminated the lease to the family's

temporary home in Italy and announced that he would not contribute to the wife and child's

housing costs.  Aff. ¶¶ 13-15.  Moreover, the father has a history of domestic violence, which

includes a threat to have the mother killed.  Aff. ¶ 18.

Now this father -- who cannot meet and does not even allege the substantive factual

predicates for relief under the Hague Convention -- is attempting to pervert the Hague

Convention.  He is trying to use the threat of having this suckling baby removed to Italy where

he lives in a secret location (Aff. ¶ 11) and where there are no known provisions for the baby's

shelter, feeding and welfare, in order to gain a bargaining chip in the parties' domestic dispute.

This Court lacks the jurisdiction to give the father the relief he seeks. As is set forth

below, his pleading fails to specify facts sufficient to establish the subject matter jurisdiction of

this Court.  Moreover, the necessary allegations cannot be made, since they would have no

support in fact.  Additionally, the Plaintiff's pleading fails to state any statutory authority or

factual basis for exercising personal jurisdiction over the mother, or the baby, in the District of

Columbia.  Therefore, the Plaintiff's Complaint (which also fails to comply with the rules of

this court) should be dismissed.  Additionally, personal identifying information about the

parties' child was improperly included by the Plaintiff in the pleadings and that information

should be redacted from the filed pleadings, or the pleadings and exhibits containing such

information should be placed under seal.

### Argument

A.    The Complaint Fails to Establish that this Court Has Subject Matter Jurisdiction.

Fed. R. Civ. P. 8(a) requires that a Complaint contain "a short and plain statement of the

grounds upon which the court's jurisdiction depends." If the Complaint fails to allege sufficient

facts to establish that the court has subject matter jurisdiction, the Complaint should be

dismissed pursuant to Fed. R. Civ. P 12(b)(1). *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C.1998).  The Plaintiff bears the burden of establishing subject matter jurisdiction.  *Id.*

In his Complaint at Paragraph 3, (under the heading "II. Jurisdiction"), the Plaintiff merely alleges that the Court has subject matter jurisdiction pursuant to "42 U.S.C. § 11603 (2001) and because this case involves the removal and retention of a child under the age of sixteen from her habitual residence of Italy to the United States of America."  The balance of the Complaint does not allege facts sufficient to establish that this Court has subject matter jurisdiction to adjudicate the claims asserted in the Complaint.

The Plaintiff is attempting to invoke the jurisdiction provided to federal courts pursuant to The Convention of the Civil Aspects of International Child Abduction ("the Hague Convention").  Under the statute implementing the Hague Convention in the United States, a person who seeks to invoke the Hague Convention by filing a civil suit in United States District Court or a state court, must file in a court "which has jurisdiction of such action and which is authorized to exercise its jurisdiction <u>in the place where</u> the child is located at the time the petition was filed." 42 U.S.C. § 11603(b)(emphasis supplied). There are no allegations in Paragraph 3 or elsewhere in the Complaint that the child was living in or located in Washington, D.C. when the petition was filed.  Paragraph 8 alleges only that the child has been living "in the Washington D.C. <u>area</u>."  Paragraph 18 alleges only that the child's address is "in the <u>greater</u> Washington D.C. <u>area</u>."  Omitted from the pleading is the essential allegation explicitly required by the federal statute that the child was located in the jurisdiction of this Court, the geographic boundaries of <u>Washington, D.C., at the time the petition was filed</u>.

Indeed, although not required to do so, since the allegations of the Plaintiff are on their face inadequate, the mother has attached hereto an Affidavit which establishes that she and the

baby are now living in Maryland and that she and the baby were not even in the United States on December 26, 2006, when the Complaint was filed. Aff. ¶¶ 16-17. Accordingly, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which this Court could grant relief.

  B. <u>The Plaintiff fails to cite a legal basis or facts pursuant to which this Court could have personal jurisdiction over the mother and the Child.</u>

  The Plaintiff makes no allegations regarding the basis for the Court's <u>personal</u> jurisdiction over the mother or the child. The Plaintiff bears the burden of proof as to establishing personal jurisdiction. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp.2d 34, 42 (D.D.C. 2003). The Complaint cites no statute providing a basis for this Court to exercise <u>personal</u> jurisdiction over the mother or the child, nor are there any facts alleged in the Complaint from which the Court could ascertain that it would have personal jurisdiction over either the mother or the child. The failure to allege facts sufficient to establish personal jurisdiction is grounds for dismissal pursuant to Fed. R. Civ. P. 12(b)(2). *Ibrahim v. District of Columbia,* 357 F. Supp. 2d 187**,** 193 (D.D.C. 2005); *Robinson v. Ashcroft,* 357 F. Supp. 2d 142, 148 (D.D.C. 2005).

  The Complaint seeks to remove a one-year-old, breast-feeding baby (Aff. ¶ 5) from her habitual residence in the United States, (Aff. ¶¶ 5-8), to return the child to a place of temporary residence, to a father who has a history of violence (Aff. ¶ 18) and who has not revealed his living arrangements (Aff. ¶ 11). The child would be returned to an unknown location where there are no known arrangements in place for her shelter, care and protection once she arrives (Aff. ¶ 19). Before the Court can order such a harsh remedy, the Court must have personal jurisdiction over the mother and the baby. This is confirmed by 42 U.S.C. § 11603(b) which

provides that suit must be brought "where the child is located."  Not only is the baby not located in the District of Columbia, the baby has not even spent one night in the District of Columbia since she returned from Italy.  Aff. ¶ 16.  It would be improper for a Court in the District of Columbia to exercise personal jurisdiction given the Plaintiff's failure to cite a statutory or factual basis for doing so.

      C.    <u>The Complaint Should Be Dismissed for Violation of Local Court Rule 5.1</u>

LCvR 5.1 provides that: "The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party."  The Rule further provides that: "Failure to provide the address information within 30 days after filing may result in the dismissal of the case against the defendant."  The same requirements are found in LCvR 11.1. The address listed by Plaintiff in his Complaint, which was filed more than 30 days ago, is actually his work address.  Aff. ¶ 11.  He works at the International Fund for Agricultural Development (IFAD) which is an international agency with sovereign immunity.  Affidavit of Andrea Russo ¶¶ 6-8 (attached).  Additionally, he has diplomatic status in Italy.  Defendant's Aff. ¶ 11.  Plaintiff has refused to disclose his residence address to his wife since shortly after September 4, 2006, when he left the family.  *Id.*  His omission of the required home address in his pleading appears to be intentional, as he can substantially delay service of process (of, for example, a case for child support or custody) by not providing his home address.  Affidavit of Andrea Russo ¶¶ 6-12 (attached).  If the Plaintiff expects to be able to use the courts in this country he should expect to comply with the rules of the courts.  He continues to hide his own residence for strategic reasons in violation of LCvR 5.1 and 11.1, and the Court should exercise its discretion to dismiss his case for that violation under these circumstances.[1]

---

[1] The Plaintiff could certainly choose to file an action in a state or local court which actually has subject matter and personal jurisdiction since the mother's residence address is set forth fully in the caption and in her affidavit.

D.     The Complaint Improperly  Discloses Personal Information About the Child and The Documents Containing That Information Should Be Placed Under Seal

LCvR 5.2(f) provides that children are entitled to certain privacy protections.  Under subsection (2), "If the involvement of a minor child must be mentioned, only the <u>initials</u> of that child should be used" (emphasis supplied).  Under subsection (3), "If an individual's date of birth must be included in a pleading, only the year should be used."  Plaintiff violates this rule throughout his pleadings.  (See, for example, Complaint ¶¶ 4 and 6).  He also gratuitously attached the child's birth certificate as Exhibit A to his Complaint which contains her full name and date of birth.  There was no need to publicly name the child and disclose her birth date.  If that personal information is truly needed in the pleadings, LCvR 5.2(f) provides that Plaintiff can file the document under seal.  Accordingly, the mother requests that the filings of the Plaintiff disclosing such information be redacted or placed under seal to protect the privacy of the child in this case.

<u>**Conclusion**</u>

For the reasons set forth above, the Complaint should be dismissed because the Court lacks subject matter jurisdiction and the Complaint does not allege facts or law sufficient to establish that the Court has personal jurisdiction over the mother and the child.  In addition, the Complaint should be dismissed because of the Plaintiff's calculated decision not to disclose his place of residence in violation of LCvR 5.1 and 11.1, or, at a minimum the Plaintiff should be compelled to disclose in his pleadings his full current residence address.  Finally, the mother requests that the Plaintiff be required to have his Complaint and other pleadings placed under seal and that he be instructed to comply with LCvR 5.2(f) in any future filings with this Court.

Respectfully submitted,


/s/

By:   _____
Faith D. Dornbrand (D.C. Bar #321851)
Pasternak & Fidis, P.C.
7735 Old Georgetown Road
Suite 1100
Bethesda, Maryland   20814
301-656-8850
301-656-3053 (fax)
Counsel for Defendant

and

Randell Ogg (D.C. Bar #324772)
1150 Connecticut Avenue, N.W.
Washington, D.C.   20036
202-828-4100
202-828-4130 (fax)
Counsel for Defendant

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
|  | : | **ORDER** |
| KHALID EL-HARIZI | : |  |
| Residence Address Unknown | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | CASE NO.:    06cv2204 (RJL) |
|  | : |  |
| CLAUDIA PARDINAS-OCANA | : |  |
| 5480 Wisconsin Avenue, Apartment 704 | : |  |
| Chevy Chase, MD   20815 | : |  |
|  | : |  |
| Defendant. | : |  |

**ORDER**

Having considered the Defendant's Motion to Dismiss and to Redact, or Place under

Seal, Filed Pleadings, the response thereto, and the record herein, it is the _____ day of

_____ 2007, hereby

ORDERED that said motion shall be and hereby is granted and it is further

ORDERED that the Complaint filed herein shall be dismissed, and it is further

ORDERED that the Complaint, and Exhibit A thereto, shall be placed under seal in this

Court.

_____
Judge, United States District Court for the District
of Columbia

Copies to:


Faith D. Dornbrand
Pasternak & Fidis, P.C.
7735 Old Georgetown Road
Suite 1100
Bethesda, MD  20814


Randell Ogg
1150 Connecticut Avenue, N.W.
Washington, D.C.   20036


Stephen J. Cullen
Rachel T. McGuckian
Miles & Stockbridge, P.C.
One West Pennsylvania Avenue
Suite 900
Towson, MD   21204

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

KHALID EL-HARIZI                           :        **AFFIDAVIT OF ANDREA RUSSO**
                                           :
      Plaintiff,                      :
                                           :
v.                                         :        CASE NO.:    06cv2204 (RJL)
                                           :
CLAUDIA PARDINAS-OCANA                     :
                                           :
      Defendant.                      :

### AFFIDAVIT OF ANDREA RUSSO

1.     I, Andrea Russo, am an adult of sound mind and body. I am competent to make this affidavit.

2.     I have practiced family law in Rome Italy since 1981. I was admitted to practice before the Supreme Court of Italy since 1994. I have been a member of the Rome Bar Association, the International Bar Association (Family Law Committee) since 1987 and the International Academy of Matrimonial Lawyers since 1994.

3.     Since 1987, I have been a lecturer on family law topics within Italy, and on the reform of Italian private international law at international gatherings and abroad, including for multiple years at the Dickinson University Law School in Italy.

4.     I am the co-author of "The Reform of the Italian System of Private International Law with Particular Regard to Domestic Relations Issues," North Carolina Journal of International Law and Commercial Regulations (2000), and of the Italian chapter in Family Law in Europe (1992)

1

5.      I have previously been cross-examined as an Expert Witness in separation proceedings in Portland, Oregon, giving evidence on Italian family law.

I have been previously appointed to give evidence on Italian family and succession law in divorce proceedings in the United Kingdom, submitting to the Court a written opinion on such issue.

During my career, I have advised clients of many different nationalities and jurisdictions in matters related to family law (pre-marital agreements, separation and divorce, child abduction, succession law) and have represented many of them in Court.

I have represented several clients in child abduction cases between Italy and the United States of America.

6.      I am familiar with the International Fund for Agricultural Development (IFAD), a U.N. agency located here in Rome and have handled cases involving individuals employed at IFAD.

7.      The normal method to serve a suit for custody and child support in Italy is to have a process server deliver the suit papers to the individual being sued. According to the Italian Civil Procedural Code such a service can be made primarily "*serving the writ personally upon the summoned party at his/her home or, if this is not possible, wherever he/she can be personally found within the district of the Court*" ( art. 138 of Italian Civil Procedural Code). Failing that, the service can be made in the Municipality of residence of the summoned party, at his/her home or at his/her office: if he/she is not physically found there, the writ can be served upon other persons found there, who have a personal/business relationship with him/her. In such a case, the summoned party is then informed by way of registered letter (art. 139 of Italian Civil Procedural Code).

2

8.    Since IFAD is an international body which has sovereign immunity in Italy, employees of IFAD cannot be served through normal means at their place of business.

9.    According to art. 4 of the Law May, 23, 1980 n. 289, which governs the relations between Italy and IFAD, the Headquarters of IFAD is inviolable, and no clerk or agent of the Italian Republic can be admitted to exercise his/her rights, without the approval of IFAD's President, and *"no service of writ can take place within the Headquarters ... without the President's consent and upon the conditions approved by him"* [see art. 4 Law 289/1980, a), last three lines]. However, is also stated that IFAD will not allow the Headquarters to be used to avoid service or execution of a act [see art. 4 Law 289/1980, c), last three lines].

10.    In my experience, to try to serve an individual at IFAD, we can not use the usual way of serving an act, as described above, but we must use a much more cumbersome and time consuming process.

11.    Serving an act within IFAD Headquarters will be considered as serving an act abroad, according to art. 142 of Italian Civil Procedural Code. Such service is made by sending a copy of the writ to the summoned party by mail with a registered letter, while another copy will have to be consigned to the *Pubblico Ministero* (Public Prosecutor), who will take care of the service of the said writ through the *Ministero degli Affari Esteri* (Ministry of the foreign affairs). This can take significantly longer to process than the usual method of service, and before the plaintiff can be sure that the service actually occurred: at least four or five times as long as the usual way .

12.    It is far easier to serve an individual at his or her residence address than to go through what can be a lengthy process of serving someone on the international territory of IFAD.

3

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 9, 2007.

Andrea Russo
Largo Angelo Fochetti, 28
00154 – Rome, Italy

K:\CLIENTS\340 – 0.dom\Fileadings\AFF  Russo 2.08.07.doc

4

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

KHALID EL-HARIZI                    :     **AFFIDAVIT OF DEFENDANT**
                                    :
        Plaintiff,                  :
                                    :
v.                                  :     CASE NO.:    06cv2204 (RJL)
                                    :
CLAUDIA PARDINAS-OCANA              :
                                    :
        Defendant.                  :

**AFFIDAVIT OF DEFENDANT**

1.      I, Claudia Pardinas-Ocana, am the defendant in this case.  I am an adult of sound mind and body and I am competent to make this Affidavit.

2.      I am the mother of V who is a U.S. citizen. (She is also an Argentinian and French citizen).  I am a permanent resident of the United States and hold a green card.  I am a citizen of Argentina.

3.      My husband is a citizen of Morocco and France.  He has diplomatic status in Italy where he is working for a U.N. agency.  He was divorced from his first wife in Morocco in 2002.  He has two adult sons from his prior marriage.  One lives in England and one lives in the United States.

4.      Not one of us is an Italian citizen or a permanent resident of Italy.

5.      Our baby was born in a hospital in the D.C. metropolitan area in the Fall of 2005.  Since her birth I have breast fed her.  I continue to breast feed her.

6.    I have lived in the United States for approximately seventeen years. We made our marital home here. We lived in Washington, D.C. together after our marriage in 2002 until December 2006. To accommodate my husband's career, I agreed to go to Italy with him temporarily and obtained approval from my employer of seventeen years, the World Bank, to work for the Bank in Italy on a telecommute basis for one year. My husband and I agreed that after the period in Italy, we would return to the D.C. metropolitan area to raise V while I continued my career at the World Bank.

7.    My temporary posting in Italy began as of February 1, 2006. It was to end as of the beginning of February 2007, unless I sought an extension by November 2006, and the World Bank approved such an extension. V and I arrived in Italy on or about February 6, 2006.

8.    Before leaving for Italy, I changed V's existing status on the waiting list at the World Bank childcare center in D.C. I changed her status to list her for an entry date of February 2007.

9.    On or about August 30, 2006, after I had been in a strange country just a few months, my husband announced he wanted his freedom and he was leaving me and our eleven month old daughter and would be moving out shortly. He left us on September 4, 2006.

10.    I fought for our family. At my request, we started an intensive series of meetings with a counselor. We had five such meetings between September 6 and October 2. I stopped the meetings when I learned in October that my husband was lying even in counseling, that he had left us for another woman, and that he had spent the weekend of October 7th and 8th, 2006 with his much younger lover in a romantic city in Italy.

2

11.     My husband said when he first moved out in September that he would initially be staying in the home of some friends, who were abroad.  Thereafter, he would not tell me where he was living, even though I asked for this information.  The address he lists in his Complaint is his work address.  My husband, who has diplomatic status in Italy, works at the International Fund for Agricultural Development (IFAD) which is an international agency with sovereign immunity.  I do not know where he currently lives.

12.     After my husband deserted us for a new relationship, he repeated told me in writing that whether and when I left to return to the D.C. area was up to me.  I repeatedly told him that I would be returning to the United States to resume my career job at the World Bank.  Thus, for example, on or about October 15 my husband wrote in an e-mail: "One thing must be clear to you: we will divorce.  But it is up to you to decide whether you stay in Rome or not and for how long."  In mid-October, at my request, my husband met me at the Argentinian embassy and signed the required forms to give his permission for an Argentinian passport to be issued for V.

13.     Indeed my husband was so intent on his new life and on relieving himself of financial responsibility for me and V, that he wrote our landlord on October 15, 2006 and terminated the lease to our family's temporary residence,  from which I was set up to work on a telecommute basis for the World Bank.  The lease required six months notice of termination.  My husband was so anxious to end the lease that he wrote to the landlord asking that the lease be terminated as of January 31, upon only three months notice.  He informed me that if I wanted to stay in Italy I must try to re-let the flat in my name and that I would be wholly responsible for the full, enormous rent.

3

14.     In terminating the lease, my husband again acknowledged his understanding that I would be returning to the United States. He wrote on October 15, 2006, that he believed I would leave Rome "within the period remaining under the current [terminated] lease since you indicated in the recent past several possibilities including November, December, and January. So I took the latest date . . ." On October 17th, my husband confirmed in writing the termination notice had been sent effective January 31, 2007. He wrote, "You should leave the flat at that date and let people visit for the next rent."

15.     In terminating the lease, my husband made it impossible for me and V to stay in Italy. We could afford the apartment only because it was paid for in part by a rental subsidy my husband received from his employment. The apartment was very expensive, and I could not afford it on my salary alone. My husband took our only car when he moved out. My mother, who had lived with us for months and babysat while I worked because it was so hard to find adequate childcare, was due to leave the country in early November. Getting an affordable apartment in Italy would be a formidable and time consuming task even if I had childcare. Moreover, getting a new internet connection in Italy takes weeks or months—when we lost our service in May we had to hire a lawyer to get it restored. With my telecommute arrangement expiring on January 31, 2007 and without a home, a means of performing the tasks of my job, a husband to help me, or a childcare provider, I could not have stayed in Italy.

16.     Apparently, my husband filed his Verified Complaint for Issuance of a Show Cause Order and for Return of Child to Italy on December 26, 2006. On that date, neither I nor V was living in, or even present in Washington D.C. Moreover, at no time on or after that date

have I or V, ever spent one night in Washington, D.C. Indeed on the day after Christmas, December 26, 2006, neither V nor I was in the United States of America at all.

17.    I have established residence for V and myself in Montgomery County, Maryland, which has an excellent public school system. We are currently residing at 5480 Wisconsin Avenue, Chevy Chase, Maryland. I have no intention at all of leaving this country or my career at the World Bank. I have never said to my husband that I requested to be transferred to Argentina. I am absolutely willing for my husband to have appropriate access to our baby.

18.    I am afraid of my husband. With the birth of our child, our relationship changed markedly. My husband was jealous of the attention I paid to the baby. When he got angry, he would scream and become verbally abusive, and there were several occasions on which he assaulted me. On one occasion in February 2006, within a few weeks after I arrived in Italy he got angry at me, yanked me by the hair and shook my head. When I told him if he treated me like that I would return to the United States immediately, he told me he would have me killed if I did so. I have a photograph of some of my bruises, after one incident in the summer of 2006. At one point I consulted a lawyer in Italy who wrote to my husband and demanded that he stop these assaults or he would be held accountable. Before I married my husband, he and I had open discussions about him coming from a family background of domestic violence and abuse, and the physical and verbal actions he had taken, particularly with respect to one of his now adult sons from his prior marriage. The emergence of these behaviors with the birth of our child has been of enormous concern to me.

19.     If my breast-feeding baby were to be returned to Italy, I would not know where she would go, as my husband will not reveal where he is living.  My husband works outside the home and travels extensively to other countries for days and weeks at a time.  I do not know who is living with my husband or who would protect or care for the baby in Italy.  I believe separating V, a breast feeding infant who does not even talk, from me, would do irrevocable emotional harm to her from which she would never recover.  I fear that my husband's anger and rages might be inflicted on our child, particularly if he had extended responsibility for her care. I fear my husband may take V to Morocco and leave V in the care of his extended family there.  In the Arab countries, once a baby is taken there by an Arab father, my understanding is that a foreign mother has no rights over the baby and thus may never see the baby again.

I  declare under penalty of perjury that the foregoing is true and correct.  Executed on February 11, 2007.

Claudia Pardinas-Ocana